UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DAVID BORUCHOWITZ,       )<br>                                             )<br>          Plaintiff,              )<br>                                             )          3:12-cv-00196-RCJ-VPC<br>     vs.                              )<br>                                             )<br>ROBERT BECKETT et al.,   )          **ORDER**<br>                                             )<br>          Defendants.          )<br>_____)  | |

This is a malicious prosecution case.  Pending before the Court are a Motion to Dismiss (ECF No. 16) and a Motion for Summary Judgment (ECF No. 20).  For the reasons given herein, the Court denies the Motion to Dismiss and grants the Motion for Summary Judgment in part as against all claims except those for malicious prosecution (under both § 1983 and state law), civil conspiracy, and defamation.

**I.       FACTS AND PROCEDURAL HISTORY**

Plaintiff David Boruchowitz, a detective with the Nye County Sheriff's Office ("NCSO"), has sued Nye County, former Nye County District Attorney Robert Beckett, and Nye County Deputy District Attorney Robert Bettinger in this Court pursuant to 42 U.S.C. § 1983 for alleged violations of the Fourth and Fourteenth Amendments in "unreasonably causing [Plaintiff] to be charged with repeated Criminal Complaints, causing him to be arrested and detained against his will and for maliciously prosecuting Plaintiff. (Compl. ¶ 2, Apr. 10, 2012, ECF No. 1).

### A.     Background

On or about March 12, 2010, Plaintiff obtained a search warrant from the Pahrump Justice Court ("PJC") to search the residence of a Mr. Robert Holmes, which warrant he executed on that date, arresting Holmes. (*Id.* ¶¶ 7–8).  Beckett eventually refused to file charges against Holmes. (*Id.* ¶ 42).  On or about April 17, 2010, Plaintiff was dispatched to a party upon reports of underage drinking and illegal narcotic use. (*Id.* ¶ 9).  When he arrived, he forced entry into the residence upon noticing an unresponsive person lying on the floor. (*Id.*).  Numerous juveniles were ultimately arrested, including a relative of Scott Cobel. (*Id.* ¶ 9).  On or about April 21, 2010, Nye County Auditor Dan McArthur and Nye County Assistant County Manager Pam Webster filed a complaint with the NCSO relating to the alleged improper use of official funds by Defendant Beckett. (*Id.* ¶ 10).  Plaintiff obtained form the PJC and executed a search warrant for the relevant documents and files. (*Id.*).  On or about May 5, 2010, Plaintiff interviewed Beckett concerning the incident and arrested him at the conclusion of the interview. (*Id.* ¶¶ 12–13).  A justice of the peace of the PJC determined there had been probable cause for the arrest, and Beckett was released on his own recognizance. (*Id.* ¶¶ 13–14).

### B.     Defendants' Criminal Complaints Against Plaintiff

#### 1.     The First Criminal Complaint

Beckett then initiated an investigation against plaintiff and held a press conference indicating he would appoint a special prosecutor to investigate his arrest, eventually naming C. Conrad Claus. (*Id.* ¶¶ 15–17).  The next day and the day after, Claus held press conferences to announce certain charges to be filed against Plaintiff. (*Id.* ¶¶ 19–20).  On May 20, Claus signed a criminal complaint against Plaintiff and filed it with the PJC. (*Id.* ¶ 21).  When a justice of the peace of the PJC signed an arrest warrant the next day, Plaintiff surrendered and was released on his own recognizance. (*Id.* ¶¶ 23–24).  On May 24, 2010, the PJC ordered the criminal complaint against Plaintiff stricken and all record of it expunged. (*Id.* ¶ 26).  Attorney Leslie Stovall,

purporting to represent Beckett, asked the PJC to reconsider, but the PJC declined, and Stovall appealed the decision to the Fifth Judicial District Court ("5JDC") in Nye County. (*Id.* ¶¶ 31–33).

### 2. The Second and Third Criminal Complaints

Defendants Beckett and Bettinger, however, continued their investigation and on May 25, 2010, the same day the first criminal complaint was stricken, filed two new criminal complaints against Plaintiff based upon the same allegations in the stricken criminal complaint but "splitting up the charges." (*Id.* ¶¶ 27–28).  Bettinger told Plaintiff the next day that he had no choice but to file the criminal complaints upon Beckett's orders. (*Id.* ¶ 29).  Plaintiff filed a motion to strike the two new criminal complaints against him. (*Id.* ¶ 30).

### 3. The Fourth and Fifth Criminal Complaints

On or about May 26, 2010, Beckett filed two more criminal complaints against Plaintiff in the PJC, which were "virtual duplicates" of the second and third criminal complaints filed by Bettinger at Beckett's request the previous day. (*Id.* ¶ 34).  One of these two criminal complaints referred to the Holmes, Cobel, and Beckett arrests noted in Part I.A., *supra*. (*Id.* ¶ 35).

### 4. The District Court Proceedings

On May 26, 2010, the justice of the peace recused herself and appointed a justice of the peace from the North Las Vegas Township to preside.  On May 27, 2010, Attorney Keith Loomis, representing Nye County, petitioned the 5JDC for a special prosecutor. (*Id.* ¶ 37).  On May 28, 2010, the Sixth Judicial District Court ("6JDC") ordered Beckett to show cause and to cease and desist. (*Id.* ¶ 38).[1]  Beckett then filed a civil lawsuit (in an unidentified court) against NCSO for the return of documents seized when Plaintiff executed the search warrant against him

---

[1] At this point the Complaint becomes a bit confusing and disjointed, some allegations are not clearly relevant, and it becomes unclear which motions were filed in which cases and in which courts.  Plaintiff alleges that Beckett filed a motion (in an unidentified court) demanding to know who was "ghost writing" his pleadings and that Claus filed a motion (in an unidentified court) at Beckett's direction for reversal of the dismissal of the first criminal complaint. (*See id.* ¶¶ 39–40).

and for the suppression of certain statements. (*Id.* ¶ 41). Eventually, a district judge from the Third Judicial District Court was appointed in the 6JDC due to the recusal of the 6JDC judge, and the new judge appointed a special prosecutor. (*Id.* ¶ 49). On October 8, 2010, Plaintiff appeared in the North Las Vegas Justice Court concerning all criminal charges against him, at which time the Special Prosecutor Peter Christianson dismissed all charges against Plaintiff, and the justice of the peace apologized to Plaintiff for "having to go through this." (*Id.* ¶ 54).

### C. The Present Case

Plaintiff filed the present Complaint in this Court alleging several claims that the Court will characterize as follows: (1) false arrest, malicious prosecution, and intentional infliction of emotional distress ("IIED") under § 1983; (2) negligent training, supervision, and retention; (3) "breach of duty of care," i.e., negligence; (4) "prosecutorial misconduct," i.e., common law malicious prosecution; (5) civil conspiracy; and (6) defamation. Punitive damages is also pled as a putative cause of action, but it is properly characterized as part of the prayer for relief.

## II. LEGAL STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. ANALYSIS

Beckett first asks the Court to dismiss under Rule 12(b)(5) for failure to timely serve him under Rule 4(m). The Court denies the motion. Beckett does not appear to challenge the method or fact of service but only its timeliness under Rule 4(m). Rule 4(m) permits a court to dismiss, without prejudice, upon failure to serve within 120 days of filing a complaint.[2] A court may excuse untimely service with or without good cause. *See In re Sheehan*, 253 F.3d 507, 512–13 (9th Cir. 2001). Plaintiff argues there is good cause for the late service, i.e., alleged evasions of service and multiple invalid addresses provided by Beckett recounted in the Response. Because the statute of limitations would otherwise run, and because it is clear Beckett had actual knowledge of the legal controversy, the Court in its discretion excuses the untimely service and denies the motion to dismiss.[3] Next, Nye County and Bettinger ask the Court to grant them summary judgment.

#### A. The § 1983 Claims

To state a claim under § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Individuals are entitled to qualified immunity against claims of constitutional violations, unless: (1) there has been a constitutional violation; and (2) the state of the law was clear enough at the time of the violation that a reasonable person in the defendant's position would have

---

[2] In the present case, the effect would apparently be dismissal with prejudice, because, according to Plaintiff, the statute of limitations has run.

[3] The Court, however, rejects Plaintiff's argument that he simply failed to notice a difference in the time limits for service of process between the federal and state rules. Rule 4(i) of the Nevada Rules of Civil Procedure has since 2005 provided the same 120 days to serve a defendant as Rule 4(m) of the Federal Rules of Civil Procedure, not the 180 days that the state rule previously provided, as Plaintiff erroneously states in response. The only difference between the two rules is that the state rule is in fact less forgiving than the federal rule upon untimely service. *See* Nev. R. Civ. P. 4(i), drafter's note (noting that unlike the federal rule, a Nevada state court has no discretion to excuse untimely service absent good cause).

known his actions violated the plaintiff's rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A court has discretion to analyze the second prong of the *Saucier* test first in order to avoid unnecessary constitutional rulings. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Plaintiff alleges a constitutional violation for malicious prosecution. The Court interprets this as a "shocks the conscience"-type substantive due process claim under the Fourteenth Amendment. Defendants argue first that they are entitled to absolute prosecutorial immunity. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 912 (9th Cir. 2012) ("Prosecutors performing their official prosecutorial functions are entitled to absolute immunity against constitutional torts."). The scope of protection is broad:

> Prosecutorial immunity has developed along much the same lines as judicial immunity. Immunity extends to protect a prosecutor who acts within his or her authority and in a quasi-judicial capacity. The focus is on the nature or function of the prosecutor's activity. Where a prosecutor acts as an advocate "in initiating a prosecution and in presenting the state's case," absolute immunity applies.
>
> . . . .
>
> We [previously] held that "where a prosecutor faces an actual conflict of interest, and files charges he or she knows to be baseless, the prosecutor is acting outside the scope of his or her authority and thus lacks immunity."
>
> . . . .
>
> In light of the criticism directed to [our previous rulings], we elect to reexamine the scope of judicial and prosecutorial immunity. At the heart of our reexamination is the task of defining which judicial and prosecutorial acts are to be protected from scrutiny by the immunity doctrines. . . . [T]he prosecutor's actions . . . of initiating a prosecution was clearly an act within his authority. Although "grave procedural errors" were made in each instance, such errors are not enough to deprive the actors of immunity. Unless the actions taken were clearly without jurisdiction (judges) or authority (prosecutors), immunity should have applied.
>
> We concluded in [the previous cases] that no immunity applied because we focused not on these ultimate acts but rather on the act of conspiring to predetermine the outcome of the proceeding. There appears to be no other authority for making the underlying conspiracy the determinative act in deciding whether immunity should be available. Judges' immunity from civil liability should not be "affected by the motives with which their judicial acts are performed." Intent should play no role in the immunity analysis. Moreover, allegations that a conspiracy produced a certain decision should no more pierce the actor's immunity than allegations of bad faith, personal interest or outright malevolence.

> The primary policy of extending immunity to judges and to prosecutors is to ensure independent and disinterested judicial and prosecutorial decisionmaking. To effectuate this policy, we will broadly construe the scope of immunity. To foreclose immunity upon allegations that judicial and prosecutorial decisions were conditioned upon a conspiracy or bribery serves to defeat these policies.
>
> We conclude that our prior decisions construed the immunity doctrines too narrowly by focusing on underlying actions instead of looking to the ultimate acts. Although the Supreme Court has not clearly rejected the analysis of our prior decisions, various circuit courts have explicitly and persuasively rejected that analysis. In addition, policy considerations favor a liberal application of immunity. We therefore hold that a conspiracy between judge and prosecutor to predetermine the outcome of a judicial proceeding, while clearly improper, nevertheless does not pierce the immunity extended to judges and prosecutors. As long as the judge's ultimate acts are judicial actions taken within the court's subject matter jurisdiction, immunity applies. Prosecutors are absolutely immune for quasi-judicial activities taken within the scope of their authority. To the extent that [our previous cases] are to the contrary, they are overruled.

*Ashelman v. Pope*, 793 F.2d 1072, 1076–78 (9th Cir. 1986) (en banc) (citations omitted). Only if a prosecutor engages in non-prosecutorial activities, such as gathering evidence or providing legal advice to the police, does he act outside the scope of absolute immunity. *See Lacey*, 693 F.3d at 913. The Court finds that in this case, there is sufficient evidence for a fact-finder to conclude that Defendants participated in the investigation of Plaintiff beyond the scope of their purely prosecutorial functions. The Court will not grant summary judgment on this claim. Nor can the Court grant qualified immunity. It would have been clear to a reasonable prosecutor that he may not proceed against a defendant maliciously without probable cause.

**B. Negligent Training, Supervision, and Retention**

Plaintiff alleges Nye County was negligent in training, supervising, and retaining Bettinger, and that its negligence resulted in Bettinger's filing the second and third criminal complaints against him in violation of his constitutional rights. As the Court has ruled before, this type of claim only lies for physical harm to a Plaintiff. *See, e.g.*, *Hall v. Raley's*, , at *8–9 (D. Nev. Jan. 6, 2010). In the present case, there is a claim of some physical contact via the arrest, but not of any compensable physical injury. The Court therefore dismisses insofar as the claim is meant to be a claim under the common law.

Insofar as the claim is meant to lie directly under § 1983, there is no respondeat superior liability under § 1983, and an inadequate supervision theory, where the alleged harm resulting is a violation of constitutional rights, cannot be invoked to circumvent the strictures of *Monell*. *See Dougherty v. City of Covina*, 654 F.3d 892, 900–01 (9th Cir. 2011); *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233–34 (9th Cir. 1989) ("A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee. . . . Municipalities cannot be held liable simply because they employ a tortfeasor."). That is, a plaintiff cannot invoke the common law doctrine of simple negligence to vindicate rights against a municipal employer under § 1983 with a lesser showing of culpability than *Monell* requires. *See Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996). Nye County cannot be held liable for negligent training, supervision, or retention unless the elements of *Monell* are sufficiently pled and supported. They are not. There is no indication of any official policy by Nye County leading to the alleged constitutional harm. Plaintiff alleges a personal vendetta against him by Beckett. The Court grants summary judgment on this claim.

### C. "Breach of Duty of Care" and "Prosecutorial Misconduct"

The "breach of duty of care" claim is a claim of negligence based upon the theory that Defendants were negligent in bringing charges against Plaintiff. Prosecutorial immunity obviates such a claim. Only if charges are brought with malice can a prosecutor be held civilly liable therefore, and Plaintiff has brought the appropriate claim: malicious prosecution, *see infra*. And although Plaintiff is free to file bar complaints against Defendants, the "prosecutorial misconduct" claim is not a separate claim but a malicious prosecution claim, which is separately pled. The Court grants summary judgment against these claims as a matter of law.

### D. Malicious Prosecution

"[T]he elements of a malicious prosecution claim are: '(1) want of probable cause to

initiate the prior criminal proceeding; (2) malice; (3) termination of the prior criminal proceedings; and (4) damage.'" *LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002) (quoting *Jordan v. Bailey*, 944 P.2d 828, 834 (Nev. 1997)). "A malicious prosecution claim requires that the defendant initiated, procured the institution of, or actively participated in the continuation of a criminal proceeding against the plaintiff." *Id.* at 879–80.

Plaintiff has sufficiently pled this claim by alleging that Beckett and Bettinger filed criminal charges against him knowing there was no probable cause, that the charges were dismissed, and that he suffered financial, dignitary, and emotional damages via the arrest pursuant to the charges and in having to defend against them. Defendants do not argue against this claim as a factual matter but simply allege that they are immune from it. The Court disagrees. "Appellant contends that we should recognize an exception to the general rule of absolute prosecutorial immunity where a plaintiff alleges that a prosecutor has both an actual conflict of interest and knowledge that the charges filed are baseless. We agree." *Stevens v. McGimsey*, 673 P.2d 499, 500 (Nev. 1983) (citing *Beard v. Udall*, 648 F.2d 1264 (9th Cir. 1981)) (citations omitted).[4] There is a genuine issue of material fact whether Beckett and Bettinger filed charges because of his personal interest, i.e., the personal animosity between Plaintiff and Beckett based upon Plaintiff's previous criminal investigation of Beckett, and where there was no probable cause. Defendants provide no argumentation on the issue of whether there was in fact probable cause for Plaintiff's prosecution but rely purely upon the immunity argument. The Court denies summary judgment on this claim.

///

---

[4]*Beard*'s exception to absolute prosecutorial immunity from federal claims has since been overruled, *see Ashelman*, 793 F.2d at 1078, but Nevada's exception appears to be intact for the purpose of a state law malicious prosecution claim. In Nevada, the malicious prosecution tort lies even if the prosecutor remains within his function as a prosecutor, where there is an actual conflict of interest and knowledge that the charges are baseless.

### E.    Civil Conspiracy

Plaintiff alleges a civil conspiracy between Beckett and Bettinger.  An actionable conspiracy consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts. *Collins v. Union Fed. Sav. & Loan*, 662 P.2d 610, 622 (Nev. 1983). This claim must be based upon an alleged agreement between Beckett and Bettinger to prosecute Plaintiff maliciously.  The Court denies summary judgment on this claim.  There is sufficient evidence that Beckett and Bettinger conspired to prosecute Plaintiff without probable cause. Plaintiff attests that Bettinger "basically admitted" to him that he had filed the charges at Beckett's request knowing that there was no basis in law and fact for the charges. (Boruchowitz Dep. 3–4, Jan. 18, 2013, Pl.'s Ex. 23).

### F.    Defamation

Plaintiff complains of the press release he alleges Beckett caused Claus to make concerning criminal charges against Plaintiff.  The Court finds that Plaintiff was not a public figure for the purposes of the First Amendment's application to the defamation claim.  Still, because the statements were clearly on a matter of public concern—the prosecution of a county officer growing out of animosity between the officer and a county prosecutor—the First Amendment requires that Plaintiff prove both negligence and falsity by a preponderance of the evidence to obtain special damages, and that he must prove malice by clear and convincing evidence, i.e., "the *New York Times* standard," to obtain either presumed or punitive damages. *See Gertz v. Robert Welch*, *Inc.*, 418 U.S. 323, 348–50 (1971).  Although the Court notes these restrictions, it denies summary judgment on the defamation claim.  The transcript of Beckett's May 18, 2010 press conference is sufficient to avoid summary judgment on this claim. (*See* Pl.'s Ex. 22).  At that press conference, Les Stovall, the special prosecutor, after being introduced by Beckett, stated that "[a] deputy sheriff" had obtained a search warrant against Beckett via an

affidavit with "false statements of fact and law" and without probable cause, and that "the deputy" had failed to treat seized materials properly and "undertook his own investigation," resulting in the freezing of an account and dishonoring of certain checks meant to provide restitution to victims of bad check writing.  Beckett later stated that the freezing of the account was "a crime."  There is sufficient evidence to present to a jury on the defamation claim.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 16) is DENIED.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 20) is GRANTED IN PART and DENIED IN PART.  The Court grants summary judgment against all claims except those for malicious prosecution (under both § 1983 and state law), civil conspiracy, and defamation.

IT IS SO ORDERED.

Dated this 9th day of September, 2013.

_____
ROBERT C. JONES
United States District Judge